Commonwealth *v.* Gable, Appellant.

450

Argued May 11, 1936. Before KEPHART, C. J., SCHAF-FER, MAXEY, LINN, STERN and BARNES, JJ.

*J. H. Connell, Jr.,* for appellant.

*Stephens Mayer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, October 5, 1936:
This is a case of first degree murder. The jury fixed the penalty at death. The condemned, appealing to us from the sentence, submits three questions: (1) May the Commonwealth introduce in evidence his written confession when it contains references to the commission by him of other crimes not connected with the homicide? (2) The defense being insanity, was it error for the trial judge to review in detail the evidence of the Commonwealth and to instruct the jury that if they believed it, their duty was to find the defendant guilty of murder in the first degree with the death penalty, without at that specific time referring expressly to the affirmative defense of insanity? (3) The defense being insanity, was it improper for the judge to refuse to instruct the jury that in the event of a verdict of not guilty by reason of insanity, it would be his duty to commit the defendant to a state institution for the insane?

The murder was a most cruel one. Its revolting details need not be recited. It is sufficient to say that the victim was a woman almost eighty years' old who was a neighbor of defendant, living across the street from his home. He was twenty years of age and had been out of school for about four years. He had not worked for

many months before the killing and was apparently loafing around, living by his wits. The deceased was in her home alone. This the defendant knew. He thought there was considerable money in the house and entered it shortly after midday for the purpose of stealing the money. He encountered the deceased, struck her with his fist, beat her with objects in the room, including a tea kettle and an electric iron, and stabbed her to death. He then ransacked the house, stealing such money and other articles as he could find. Shortly after its commission the crime was discovered. The defendant was arrested the following day. He made a confession in writing, in which the details of the killing were recited. He repeated them on the witness stand when called as a witness in his own behalf. As before stated, the defense was insanity. The attempted proof of it did not impress the jury, nor does it us.

In answering the first question submitted, it may be stated that it has been presented to us more than once and our conclusion has been that if a voluntary confession is made to police officers, the whole is admissible in evidence, even though it may contain admissions of other offenses unrelated to the one for the commission of which the defendant is on trial: *Com. v. Weston,* 297 Pa. 382, 147 Atl. 79; *Com. v. Dague,* 302 Pa. 13, 152 Atl. 839. But in this case there is a further reason why the confession in its entirety was not objectionable. In it the defendant admitted all the details of the crime. These admissions unerringly established that the murder was of the first degree. They, as fully as in any case that can be imagined, warranted the death penalty. Therefore the mentioning of other offenses could not have prejudiced the defendant, he had himself shown the enormity of his crime, its degree and the warrant for the penalty. The other crimes recited were not makeweights for his conviction, under his own story no makeweights were required. When he took the witness stand, he repeated what he had stated in the confession in full detail. His

defense was not that he had not committed the crime, but that at the time he was irresponsible, urged to do what he did by an overmastering impulse. The confession in its entirety was properly placed in evidence: *Com. v. Mellor,* 294 Pa. 339, 144 Atl. 534.

As to the second question stated, that the trial judge did not expressly refer to the defense of insanity in connection with his review of the Commonwealth's evidence, and his instruction that if the jury believed it, their duty was to find a first degree verdict with the death penalty, it is sufficient to say that a reading of the charge shows full instructions on the insanity defense. A court cannot be convicted of error in the order in which it gives a jury instructions, provided the instructions are adequate when announced.

The third question involves the proposition that, in a homicide case, where the defense is insanity, the trial judge must state, when requested to do so, that if the verdict is not guilty by reason of insanity, it will be his duty to send the defendant to a state institution for the insane. With this the jury has nothing to do and it was not error to refuse to so tell them.

Other matters are brought to our attention, not set forth in the statement of the questions involved. Under our rules we would not ordinarily consider alleged errors not covered in the statement of questions. As this, however, is a death case we have extended our review.

Under the second assignment of error, it is argued that the court improperly received in evidence the testimony of a witness, who said that he met the defendant in the county jail and sold him a pair of gloves which he identified as one of the Commonwealth's exhibits. It is contended that the statements of this witness prejudiced the defendant in that they showed that he had been an inmate of the county jail prior to the murder of which he was charged. In his confession and in his testimony the defendant stated that he wore kid gloves at the time of the murder and that he did so "to stop the finger

prints." In order to establish the truth of the defendant's confession the Commonwealth had the right to show that the defendant actually had the gloves in his possession and how and where he acquired them. The fact that the introduction of this evidence might prove unfavorable to the defendant is not sufficient to render it inadmissible: *Com. v. Cicere*, 282 Pa. 492, 128 Atl. 446; *Com. v. Vasbinder*, 292 Pa. 506, 141 Atl. 476; *Com. v. Parker*, 294 Pa. 144, 143 Atl. 904; *Com. v. Melissari*, 298 Pa. 63, 148 Atl. 45.

The third assignment sets forth that the court erred in charging the jury that "The first verdict possible in this case would be murder in the first degree with the death penalty; the second would be murder in the first degree with the punishment fixed at life imprisonment." The balance of this paragraph is as follows: "However, the jury have the power to return a verdict of manslaughter or a verdict of not guilty, or a verdict of not guilty by reason of insanity, because in this particular case the defense offered is that of insanity." These statements were made at the beginning of the charge when the court was discussing in detail the law of murder in this state. Up until the time the learned judge in the court below gave this instruction he had not commented in any way upon the facts of the case. We fail to see how this instruction was in any way prejudicial to the defendant.

The fifth assignment complains that the court erred in charging the jury: "That is the principal part of the story of the crime as related from the witness stand, and that contains every element necessary to make out the crime of murder of the first degree, and justifies the highest penalty that the law can impose. It is one of the most sordid and brutal crimes in the history of this county, and if that is true and you believe that testimony, the testimony of these officers who testified for the Commonwealth as to what they found, and you believe that confession to be true, and believe that his mind conceived and directed the acts that resulted in the

death of this old lady, you would be freely warranted and it would be your duty to return a verdict of murder in the first degree, and it would unquestionably be a case where the jury in the exercise of its discretion could impose the highest penalty known to the law, namely, the penalty of death." It is contended that this portion of the charge was erroneous because the court expressed its opinion in an improper manner, distinguished between a class of witnesses, and because it directed the jury to consider the evidence of the Commonwealth apart from the defense. We find no merit in these objections. As to the expression of opinion by the court as to what punishment the defendant deserved, the learned trial judge in other portions of the charge carefully pointed out that the kind of verdict was in the jury's discretion. "An expression of opinion, so qualified, is not improper": *Com. v. Stabinsky,* 313 Pa. 231, 234, 169 Atl. 439; *Com. v. Nafus,* 303 Pa. 418, 154 Atl. 485; *Com. v. Edwards,* 318 Pa. 1, 178 Atl. 20. There is nothing in this portion of the charge which distinguishes between a class of witnesses nor do we find that the court instructed the jury to consider the Commonwealth's case separate and apart from the defense. The learned trial judge fully discusses the defense in his charge. It was presented in a fair and impartial manner. The case of *Com. v. Palome,* 263 Pa. 466, 106 Atl. 783, is not similar to the one in hand. In that case the defense was self-defense and the judge charged the jury that they were first to determine whether the defendant was guilty before they considered the affirmative defense.

The sixth assignment avers that the court erred in stating to the jury that "There is no question of reasonable doubt in this case." Taking the charge as a whole it is evident that the court in so stating referred to the killing and the manner in which it was accomplished. Both of these elements of the crime were admitted by the defendant in his confession and in his testimony. As to these there could be no reasonable doubt. The court did

·instruct the jury that the Commonwealth must prove its case beyond a reasonable doubt and defined accurately the meaning of the phrase.

The seventh assignment alleges that the charge was prejudicial to the defendant and amounts to binding instructions for the Commonwealth. Our reading of it in its entirety satisfies us that the case was fairly and impartially presented.

As it is our duty under the Act of February 15, 1870, P. L. 15, section 2, 19 P. S. Sec. 1187, we have carefully read the entire record to ascertain whether it convincingly demonstrates that there are present in the proofs the ingredients necessary to a conviction of murder of the first degree; we find that they are present and therefore the judgment is affirmed.

The record is remitted to the court below for the purpose of execution.