380 A.2d 349

**COMMONWEALTH of Pennsylvania**

v.

**Warren Paul MULGREW, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued March 11, 1977.

Decided Dec. 1, 1977.

272

Vincent C. Murovich, Jr., Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Robert A. Zunich, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On January 12, 1976, appellant, Warren Paul Mulgrew, was tried by a judge sitting with a jury and found guilty of

murder of the third degree, carrying a firearm without a license, and use of a firearm in a crime of violence. The above conviction arose from the homicide of Harry Fowler on July 2, 1975. On April 1, 1976, appellant's post-verdict motions were denied. Appellant then filed a motion to reconsider the post-verdict motions, which was denied on May 25, 1976. Appellant was sentenced to a term of imprisonment of not less than ten nor more than twenty years for the conviction of murder of the third degree, and a consecutive two-and-one-half-to-five year sentence for the firearms convictions. Appellant appealed the judgment of sentence of murder of the third degree to this court and appealed the judgments of sentence in the firearms violations to the Superior Court. The Superior Court, on August 9, 1976, certified to this court the appeal for the firearms convictions.

■ Appellant argues that the court below erred in failing to charge the jury on the consequences of a verdict of not guilty by reason of insanity. We agree.

Appellant requested the following instruction:
"1. If you find that the defendant was insane at the time of the shooting, he will be acquitted on the ground of insanity. However, this Court has the power to order the defendant to be kept in strict custody, in such place and in such manner as this Court shall see fit so long as such person shall continue to be of unsound mind."
The above point for charge did not correctly state the applicable law at the time of the trial concerning the confinement to mental hospitals of persons acquitted of crimes by reason of insanity.

Appellant relied on the Act of March 31, 1860, P.L. 427 Sect. 66, as amended by the Act of April 17, 1929, P.L 532, § 2, which read:
"In every case in which it shall be given in evidence upon the trial of any person charged with any crime or misdemeanor, that such person was insane at the time of the commission of such offence, and he shall be acquitted,

the jury shall be required to find specially whether such person was insane at the time of the commission of such offence, and to declare whether he was acquitted by them on the ground of such insanity; and if they shall so find and declare, the court before whom the trial is had shall order the cost of prosecution to be paid by the county, and shall have power to order him to be kept in strict custody, in such place and in such manner as to the said court shall seem fit, at the expense of the county in which the trial is had, so long as such person shall continue to be of unsound mind."

This court, in *Commonwealth ex rel. DiEmilio v. Shovlin*, 449 Pa. 177, 295 A.2d 320 (1972), determined that the "Mental Health and Mental Retardation Act of 1966", Special Sess. No. 3, October 20, P.L. 96, art. IV, § 413, 50 P.S. § 4413, "repealed and replaced" the Act of 1860. The applicable law at the time of the instant trial[1] was:

"(a) Whenever any person charged with any crime is acquitted on the ground of insanity or having been insane at the time he committed the crime, the jury or the court as the case may be, shall state such reason for acquittal in its verdict.

"(b) In such event, the court may direct the Attorney for the Commonwealth to act as petitioner to initiate commitment proceedings under section 406."

We believe that the requested point for charge, although erroneous, "[sufficiently] alert[ed] the trial judge to an important issue in the case". *Commonwealth v. Sisak*, 436 Pa. 262, 270, n. 5, 259 A.2d 428, 432, n. 5 (1969). Therefore,

---

1. The Pennsylvania Legislature has enacted the "Mental Health Procedures Act", Act of July 9, 1976, P.L. 817, No. 143, § 101, effective in sixty days. 50 P.S. § 7101, et seq.

Section 406 of the "Mental Health Procedures Act" provides:

"Upon a finding of incompetency to stand trial under section 403 after an acquittal by reason of lack of responsibility under section 404, or following an examination in aid of sentencing under section 405 the attorney for the Commonwealth, on his own or acting at the direction of the court, the defendant, his counsel, the county administrator, or any other interested party may petition the same court for an order directing involuntary treatment under section 304."

merits of the issue are properly before this court for appellate review.

Appellant argues that the court below erred in failing to instruct the jury concerning the consequences of a verdict of not guilty by reason of insanity. We agree and reverse the judgments of sentence and remand the case for a new trial.

The trial court, relying on *Commonwealth v. Gable*, 323 Pa. 449, 187 A. 393 (1936), rejected appellant's requested charge. In *Commonwealth v. Gable, supra*, this court summarily rejected a similar point for charge by saying:

"The third question involves the proposition that, in a homicide case, where the defense is insanity, the trial judge must state, when requested to do so, that if the verdict is not guilty by reason of insanity, it will be his duty to send the defendant to a state institution for the insane. With this the jury has nothing to do and it was not error to refuse to so tell them."

Today, we overrule *Commonwealth v. Gable, supra*, and hold that it is proper to instruct the jury concerning the possibility of commitment proceedings being initiated against the defendant if such defendant is acquitted of the criminal charge filed against him by reason of an insanity defense.

We adopt the reasoning of the Circuit Court of Appeals for the District of Columbia in *Lyles v. United States*, 103 U.S.App.D.C. 22, 25, 254 F.2d 725, 728 (1957), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958), *cert. denied*, 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771 (1960), *cert. denied*, 368 U.S. 992, 82 S.Ct. 610, 7 L.Ed.2d 529 (1962). The Circuit Court of Appeals, in *Lyles*, stated:

"This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not

guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. *But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.*" (Emphasis added.)

We agree with the reasoning of *Lyles, supra,* that explaining the consequences of acquittal by reason of insanity to a jury will assist the jury in properly determining the guilt or innocence of a defendant. By such an instruction we reduce the possibility of compromise verdicts of guilty occasioned by a jury's misapprehension of "acquitting" a defendant by reason of insanity. The instruction will inform the jury that a defendant acquitted by reason of insanity may be the subject of a commitment proceeding which commitment would continue until it is established that the defendant is mentally able to return to society and not be dangerous to himself and other persons.

In *Commonwealth v. Mutina,* 366 Mass. 810, 323 N.E.2d 294, 301–02 (1975), in discussing the benefit of including an instruction concerning the consequences of an insanity acquittal, the court stated:

"On balance then, we believe it is best to entrust jurors with a knowledge of the consequences of a verdict of not guilty by reason of insanity. If jurors can be entrusted

with responsibility for a defendant's life and liberty in such cases as this, they are entitled to know what protection they and their fellow citizens will have if they conscientiously apply the law to the evidence and arrive at a verdict of not guilty by reason of insanity—a verdict which necessarily requires the chilling determination that the defendant is an insane killer not legally responsible for his acts.

"The instant case represents a classic example of the injustice which may occur when such information is withheld from the jury. The jury could have had no doubt that the defendant killed Miss Achorn. The jury also heard overwhelmingly persuasive evidence that the defendant was insane at the time of the killing and that, for a long time into the future, he will remain a menace to himself and to society. Foremost in their minds must have been a concern for the safety of the community.

"In the absence of an instruction from the trial judge as to the effect of a verdict of not guilty by reason of insanity, the jurors sought to render justice both to the defendant and to society, but theirs was not a true verdict.

. . .

"Implicit in the jury's guilty verdict was a determination that the Commonwealth had proven the defendant's sanity beyond a reasonable doubt. On the record before us, we have found no rational justification or basis for such a finding, except the jury's understandable concern for the need to confine an insane and still dangerous killer for the protection of society. The jury, lacking knowledge of the commitment necessarily flowing from a verdict of not guilty by reason of insanity, applied their own standards of justice in arriving at a verdict designed to ensure the confinement of the defendant for his own safety and that of the community."

We adopt the reasoning of the Court of Appeals for the District of Columbia and that of the Supreme Judicial Court of Massachusetts and hold that when insanity is raised as a possible defense to criminal charges, a jury must be instruct-

278

ed concerning the possible psychiatric treatment and commitment of the defendant after the return of a verdict of not guilty by reason of insanity.[2]

■ Appellant next argues that the evidence was insufficient to sustain the jury's determination that he was sane at the time of the murder. We will consider this allegation of error because if appellant prevails, he would be discharged.

In *Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975), we reiterated the standard for appellate review:

> "The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Robson*, 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); *Commonwealth v. Boyd*, 461 Pa. 17, 24, 334 A.2d 610, 613 (1975); *Commonwealth v. Murray*, 460 Pa. 605, 608, 334 A.2d 255, 257 (1975). Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Robson, supra* ; *Commonwealth v. Murray, supra; Commonwealth v. Smith*, 457 Pa. 638, 641, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The fact-finder is free to believe all, part, on none of the evidence. *Commonwealth v. Robson, supra; Commonwealth v. Smith, supra.*"

The thrust of appellant's argument centers around the conflict between psychiatric witnesses. Dr. Pochapin, a Commonwealth witness, testified that in his opinion appellant knew the value and quality of his act and that he knew right from wrong at the time of the incident. Defense counsel presented Dr. Thompson, who disputed Dr. Pochapin's testimony. However, as stated in *Rose, supra*, credibil-

---

**2.** Appellant raises other allegations of error which we need not consider because of our disposition of the above issue.

ity and weight are for the fact-finder and a fact-finder is free to believe all, none or part of the evidence presented.

Our review of the record reveals sufficient evidence to establish appellant's sanity at the time of the homicide beyond a reasonable doubt.

Judgments of sentence reversed and case is remanded for a new trial.