536 A.2d 401

COMMONWEALTH of Pennsylvania

v.

Vernon Stuart GABRIELSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 23, 1987.

Filed Jan. 13, 1988.

Petition for Allowance of Appeal Denied June 9, 1988.

272

274

C. Joseph Rehkamp, New Bloomfield, for appellant.

Gloria J. McPherson, Assistant District Attorney, New Bloomfield, for Com., appellee.

Before CAVANAUGH, BROSKY and WATKINS, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence after a jury trial in which appellant was convicted of rape and involuntary deviate sexual intercourse.

Appellant alleges: (1) that the trial judge failed to give a cautionary instruction on the limited purpose of testimony from the victim that appellant, in order to threaten the

victim, told her about a prior rape episode; (2) that trial counsel was ineffective in failing to object to the admission of this testimony without the cautionary instruction and in neglecting to object to references of the prior rape conviction in the prosecutor's closing; (3) that trial counsel was ineffective for failing to place into evidence that appellant had called the State Police, who were looking for him, which evidence would have strengthened appellant's defense of consent; (4) that trial counsel was ineffective in failing to call appellant and vigorously cross-examine the victim who presented the only testimony concerning the rape; and (5) that the evidence was insufficient to convict appellant of rape. Because none of these contentions has merit, we affirm.

In contending, initially, that the trial judge was required to give a cautionary instruction regarding the limited purpose of the complainant's testimony that appellant told her about a previous rape conviction, appellant urges us that this matter is controlled by *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). In *Claypool*, the Supreme Court held that testimony given as to defendant's statement to the victim of his prior criminal activity in order to threaten and intimidate the victim is admissible when force or threat of harm is also an element of the crime for which a defendant is presently standing trial. There, Claypool was charged with rape, involuntary deviate sexual intercourse and simple assault. As was the case here, the victim in *Claypool* testified concerning an admission that defendant had made to her at the time of the perpetration of the offenses. That admission was, as here, that Claypool had been previously incarcerated for rape. Also, as here, the purpose of this testimony was to demonstrate Claypool's intimidation of and threats to the victim to force the sexual acts upon her and, consequently, to negate the defense of consent.

In carving out this new exception to the general rule of inadmissibility of prior crimes, the Supreme Court went on to state:

Although we have determined that evidence of prior criminal acts which the defendant himself makes relevant to prove the crimes with which he is charged is admissible, we are still mindful of the potential for misunderstanding on the part of the jury when this type of evidence is admitted. Therefore, such evidence must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted.

508 Pa. at 205–06, 495 A.2d at 179.

It is this language which appellant insists creates, at least by implication, a *per se* rule mandating a cautionary instruction by the trial court regardless of whether or not it is requested.

In *Commonwealth v. McCann*, 503 Pa. 190, 469 A.2d 126 (1983), our Supreme Court was asked to consider whether the trial court was required to charge on the possible implications of a jury verdict of not guilty by reason of insanity without a specific request therefor or objection to the trial court's failure to do so. The *McCann* court relied on its earlier decision in *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977), that a defendant who raises the defense of insanity is entitled to a jury instruction on the consequences of a verdict of acquittal due to insanity. Yet, the *McCann* court refused to construe the broad language in *Mulgrew* that " 'a jury must be instructed concerning the possible psychiatric treatment and commitment of the defendant after return of a verdict of not guilty by reason of insanity' " as a *per se* rule requiring such an instruction, whether or not requested, in all cases raising the insanity defense. 503 Pa. at 195, 469 A.2d at 128, *quoting Commonwealth v. Mulgrew, supra,* 457 Pa. at 278, 380 A.2d at 352.

█ We read *Claypool's* directive that a cautionary instruction must accompany the admission of evidence of prior crimes in situations similar to the one at bar no different from the broad language in *Mulgrew* which the *McCann* court held did not create any *per se* rule, especially

when this argument in both *McCann* and *Mulgrew,* as well as here, was coupled with the alternate theory of trial counsel's ineffectiveness in failing to request such instruction or in neglecting to object to the trial court's dereliction in that regard. Moreover, were we to make a contrary determination we would be usurping our Supreme Court's seminal and still viable decision in *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974), that failure to timely object during the course of presentation of evidence cannot be saved for appellate review by alleging basic and fundamental error if not properly preserved. *See Commonwealth v. Rounds,* 510 Pa. 524, 510 A.2d 348 (1986). Instead, our decision on this initial matter, we believe, is controlled by *McCann* and *Mulgrew,* and we will proceed to analyze this issue, as did the Supreme court in those cases, on the basis of appellant's ineffectiveness claim.[1]

■ Having so concluded, the next logical step is to consider whether trial counsel was ineffective in neglecting to object to the failure of the trial court to give a cautionary instruction and in failing to request same from the trial court. We are also asked to determine whether trial counsel was similarly derelict in failing to object to various references of the prior rape conviction made by the prosecutor in closing. In doing so, we are guided by the principles recently set forth by our Supreme Court in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). *Pierce* once again reiterated the now firmly entrenched rule for deter-

**1.** Appellant's ineffectiveness claims are properly preserved for review. It is well-established in this Commonwealth that the ineffectiveness of prior counsel must be raised at the *earliest stage* of the proceedings at which counsel whose ineffectiveness is challenged no longer represents the defendant. *Commonwealth v. Hennessey,* 485 Pa. 647, 403 A.2d 575 (1979); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1978); *Commonwealth v. Johnson,* 347 Pa.Super. 93, 500 A.2d 173 (1985); *Commonwealth v. Smith,* 321 Pa.Super. 170, 467 A.2d 1307 (1983). Here, appellate counsel also served as counsel who filed supplemental post-verdict motions *nunc pro tunc,* as permitted by the trial court, preserving all the aforementioned issues therein. In accordance with the foregoing principle, the earliest stage applicable to the instant proceedings was the post-verdict period, where present counsel assumed his stewardship.

mining ineffectiveness originally announced in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), as follows:

> Our standard governing ineffectiveness claims was set forth in *Commonwealth ex rel. Washington v. Maroney,* [supra], which requires that we independently review the record and examine counsel's stewardship in light of the available alternatives. As we stressed in *Maroney:*
>
>> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of ineffective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

515 Pa. at 158, 527 A.2d at 975, *quoting Maroney, supra,* 427 Pa. at 604, 235 A.2d at 352–53 (emphasis in text). The *Pierce* court cautioned, however, that before reaching the above conclusion, resort to a two-step analysis is necessary in that, initially, counsel's performance must be evaluated in terms of reasonableness if the underlying claim has arguable merit. Secondly, a defendant must demonstrate how counsel's ineffectiveness prejudiced him. *See also, Commonwealth v. Butler,* 516 Pa. 522, 533 A.2d 992 (1987). In assessing the viability of this second prong within the analytical framework of an ineffectiveness claim, the *Pierce* court recognized that it had been employing the identical rule of law announced by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in resolving claims of ineffective stewardship. *See Commonwealth v. Bennett,* 512 Pa. 525, 517 A.2d 1248 (1986); *Commonwealth v. Christy,* 511 Pa. 490, 515 A.2d 832 (1986); *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984).

*Strickland* requires:

[A] [c]onvicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced that defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064, *quoted in Pierce*, 515 Pa. at 157–158, 527 A.2d at 975. The Supreme Court in *Pierce* then concluded that even if counsel's action or inaction has been deemed arguably meritorious, nevertheless, the inquiry does not terminate until a defendant has demonstrated the likelihood that such commission or omission has prejudiced his right to a fair trial. *Id.*

Underpinning this entire analysis, of course, are several tenets, the most basic of which is that the law presumes counsel's effectiveness. *Commonwealth v. Butler, supra; Commonwealth v. Pierce, supra; Commonwealth v. Christy, supra.* Accordingly, counsel will not be deemed ineffective for failing to raise a baseless claim, nor will his/her decision not to embark upon a particular course of conduct constitute ineffectiveness if counsel reasonably determines that no benefit will accrue or if that decision was made not as a result of sloth or ignorance of available alternatives. *Id.* Finally, counsel cannot be determined to be ineffective unless a court concludes that viable alternatives existing but not chosen offered a potential for success substantially greater than the tactics counsel actually utilized. *Commonwealth v. Pierce, supra; Commonwealth v. Christy, supra; Commonwealth ex rel. Washington v. Maroney, supra.*

■ With the foregoing principles guiding us, we conclude that the inaction of trial counsel here in not requesting a cautionary instruction and in failing to object to the admission of the subject testimony presents an arguably colorable claim of ineffectiveness, especially since the viable alternative of requesting such instruction and of lodging an objection to the trial court's allowance of this testimony was available to trial counsel. Nor are we convinced, upon a hindsight evaluation of trial counsel's inaction in this regard, that the non-pursuit of this particular course—i.e., the failure to request an instruction or object to admission of the subject testimony—had some reasonable basis designed to effectuate appellant's interests. No doubt, had the cautionary instruction been issued, either *sua sponte* or by request of trial counsel, or had an appropriate objection been lodged, this claim of error would not now be before us.

■ Our inquiry, however, cannot end here, for we must now determine whether trial counsel's shortsightedness prejudiced appellant's defense to the extent that "counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." *Commonwealth v. Pierce, supra,* 515 Pa. at 158, 527 A.2d at 975, *quoting Washington v. Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. In other words, we must consider whether, but for trial counsel's allegedly derelict stewardship, trial counsel's defective performance prejudiced the outcome of the trial. *Id.; Commonwealth v. Christy, supra; Commonwealth v. Clemmons, supra.* On review of the entire record, we conclude that appellant has failed to satisfy the second prong of the *Pierce/Strickland* analysis. This conclusion is based upon a determination that the evidence, as a whole, was sufficiently compelling to convict appellant of rape and involuntary deviate sexual intercourse.

The oft-stated test for determining the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the verdict winner, here the Commonwealth, and drawing all properly inferable deductions from the evidence, a jury could have reasonably determined that

the Commonwealth has proven each element of each offense beyond a reasonable doubt. *Commonwealth v. Stambaugh*, 355 Pa.Super. 73, 512 A.2d 1216 (1986). Gleaned from the entire record, all evidence, whether rightly or wrongly admitted, must be considered. *Commonwealth v. Westcott*, 362 Pa.Super. 176, 523 A.2d 1140 (1986).

■ Appellant's sufficiency claim asserts that the Commonwealth failed to prove the element of forcible compulsion to negate the defense of consent because no evidence was brought to light of physical abuse or the use or threatened use of a weapon. Complaint is also made of the lack of medical evidence to infer force of intercourse or even any intercourse at all.

The relevant statutory provisions read as follows:

[18 Pa.C.S.A.]

§ 3121. Rape

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution....

.    .    .    .    .

[18 Pa.C.S.A.]

§ 3123. Involuntary Deviate Sexual Intercourse.

A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution....

Our Supreme Court in *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), embraced within the statutory meaning of forcible compulsion "not only physical force or violence but also moral, psychological or intellectu-

al force used to compel a person to engage in sexual intercourse against that person's will." 510 Pa. at 555, 510 A.2d at 1226. The *Rhodes* court similarly considered the phrase "forcible compulsion" as used in Section 3121 (2) and concluded that the legislature intended that an objective standard be applied. Analyzing a sufficiency claim, either under Section 3121 (1) or (2), requires, on a case-by-case basis, consideration of the totality of the circumstances. Significant factors listed by the *Rhodes* court, while not all encompassing, include the atmosphere and physical locale of the offense, the extent of the authority of and dominion over the victim by the assailant and whether the victim engaged in intercourse under duress. *Id.*

The Supreme Court then elaborated on the proof required to sustain a conviction under either Section 3121 (1) or (2) as follows:

When forcible compulsion (used or threatened) consists of physical force or violence, relatively tangible circumstances, testimony and other evidence will tend to prove the existence of such. When forcible compulsion (used or threatened) consists of 'moral, phychological [sic] or intellectual force,' the force may be less tangible but is not less susceptible of proof, and the critical circumstances and evidence here will be those which tend to prove or disprove compulsion or lack of consent, i.e. that such force was 'used to compel a person to engage in sexual intercourse against that person's will.' ... The task of the fact finder in each case will be essentially the same, the determination of whether the victim ... was forced to do a thing (... to engage in sexual intercourse ...) against his or her will.

510 Pa. at 556, 510 A.2d at 1226–27, footnote omitted.

Within the context of the above framework, we will analyze the uncorroborated (as to the actual attack) and unrefuted testimony of the victim, Miss Dunlap, employing the *Rhodes* factors particularly applicable to the instant situation.

Miss Dunlap, in her testimony, stated that she asked appellant to drive away from the isolated, wooded area after he had picked her up in his jeep (N.T. 26, 28). Her testimony is replete with indications that she was afraid of appellant because he stated that he would beat her up badly if she attempted to leave the jeep (N.T. 32, 38) and if she did not have intercourse with him (N.T. 29, 30, 34, 40, 41).

She indicated that she removed her shirt at appellant's request because he told her that she had no choice otherwise (N.T. 29–32). Miss Dunlap had intercourse with appellant three times. The first time, appellant forced her to perform oral sex upon him (N.T. 33–34). The second time, appellant forced her to remove her remaining clothing. The victim testified that she cried the entire time (N.T. 34–36). Finally, appellant indicated that he would only believe that Miss Dunlap would not report this incident to the police if she would have intercourse with him for the third time (N.T. 40–41). She initially refused and then agreed. Her testimony in this regard was as follows: "I just laid there and cried, hoping it would be done fast.... I was just just laying there crying...." (N.T. 42).

Q. How did you feel at that point, Cherina?
A. Numb. I felt sick.
Q. Why?
A. Because it was disgusting. And I just wanted to go home.

*Id.*

Miss Dunlap's testimony also reveals that the area where appellant had parked the jeep and where the rape occurred was mountainous, wooded and isolated (N.T. 26). Her description was corroborated by Trooper Engle of the State Police to whom Miss Dunlap had reported the incident (N.T. 68). She also stated that no one else was in the area (N.T. 26, 30, 34, 37). When a truck did go by, appellant warned her not to yell because he did not want to hurt her (N.T. 39).

We are convinced that the evidence sufficiently demonstrates that the atmosphere and physical setting were such that Miss Dunlap was unable to obtain assistance or to

escape. Appellant's threats to harm her, his actual prevention of her escape from the jeep and his forcing her to have intercourse with him in a desolate area manifests his domination and control of her. Moreover, Miss Dunlap's testimony that she was afraid that appellant would hurt her if she did not have intercourse is indicative that she acted under duress. *Commonwealth v. Rhodes, supra.*

■ In a case where, as here, a victim is threatened with physical abuse if she refuses to engage in intercourse with the assailant even to the point where the victim considers it pointless to resist, we have held that such conduct demonstrates the use of force and threat of force sufficiently compelling to meet the statutory threshold of forcible compulsion. *Commonwealth v. Stambaugh, supra; Commonwealth v. Williams,* 294 Pa.Super. 93, 439 A.2d 765 (1982). It is not necessary that the victim be physically abused, be threatened with a weapon or cry. Actual force is not necessary. *Id.*

■ Because we deem the evidence otherwise sufficient to convict appellant of the crimes charged, we hold that he was not prejudiced by his trial counsel's dereliction in not requesting the cautionary instruction or in failing to object to the admission of the victim's testimony as to his prior rape conviction. We are of a similar opinion that the prosecutor's references in closing to appellant's former rape conviction did not prejudice appellant's right to a fair trial for his counsel's neglect to object, especially in light of the evidence presented as a whole. Furthermore, the trial judge in its opening instruction to the jury (N.T. 6) cautioned the jurors not to consider the comments of counsel as part of the evidence. *Commonwealth v. Nelson,* 311 Pa. Super. 1, 456 A.2d 1383 (1983).

Appellant's next two claims of ineffectiveness are that counsel was remiss in failing to place into evidence and argue during closing that appellant turned himself in to the State Police after ascertaining that the police were looking for him and in failing to call appellant and vigorously cross-examine the victim because no evidence existed of any

physical injury. We are not required to utilize the prejudice standard in assessing these two claims, for we conclude that they lack arguable merit. Since a presumption in the law exists that counsel's stewardship is effective, it logically follows that counsel cannot be ineffective for failing to pursue a futile tactic. *Commonwealth v. Christy, supra.*

■ Appellant contends in the first of these two allegations that trial counsel was ineffective in that he did not elicit from a trooper of the State Police nor argue in closing that appellant had turned himself in to the State Police rather than escape after hearing that the latter was looking for him. We recognize the failure to bring this to the jury's attention as a legitimate defense ploy designed to downplay appellant's guilt. Otherwise, it had no reasonable basis to promote appellant's interests, nor would appellant's chances for gaining an acquittal be substantially greater if this matter had been called to the jury's attention. *Commonwealth v. Clemmons, supra.*

■ Appellant's next claim of ineffectiveness centers on trial counsel's dereliction in not calling appellant to the stand to testify on the issue of consent in light of the fact that no medical evidence existed to demonstrate that a forcible rape had occurred, that appellant used no weapon, nor did he threaten the victim with a weapon, that Miss Dunlap smoked cigarettes before and after intercourse with appellant and that she went to her boyfriend after she was dropped off by appellant. Using the same analysis, as we conclude, once again, that appellant's trial counsel employed a trial tactic which he believed offered appellant a greater chance of acquittal under the circumstances. His placing appellant on the stand would have contributed nothing, in our view, to further appellant's interests.

■ We have already analyzed the sufficiency of the evidence with regard to appellant's complaints of ineffectiveness here and, once again, employing the teaching of the Supreme Court in *Commonwealth v. Rhodes, supra,* hold that the victim need not be attacked with a weapon or

be subjected to threats with a weapon or evidence any physical abuse to satisfy the statutory elements of forcible compulsion or threat of forcible compulsion. *Commonwealth v. Stambaugh, supra; Commonwealth v. Williams, supra.* Moreover, we do not perceive how any defense testimony on the fact that Miss Dunlap smoked cigarettes could have aided appellant's cause, especially when the victim admitted that she smoked cigarettes when she was with appellant, and the jury, no doubt, weighed this factor accordingly. We also find appellant's statement that "the victim was finally dropped off by the Defendant [and] went directly to her boyfriend who was waiting for her" belied by the record (Appellant's Brief, p. 14).

Miss Dunlap's unrefuted testimony indicates that she managed to escape from appellant after they left the area where the rape occurred, using the excuse that she needed to use the restroom. Appellant exited the jeep to attempt to repair it. At that point, Miss Dunlap left the jeep and ran across the road to the Garden Seat Tea Room where her boyfriend and some other friends were (N.T. 47).

In light of the foregoing, trial counsel, by placing appellant on the stand or conducting a more forceful cross-examination of Miss Dunlap, would have only succeeded in unduly inflaming the rape incident, especially the victim's predicament, and, thus, appellant's guilt potential.

█ Appellant lastly complains that the evidence was insufficient because it only consisted of the uncorroborated testimony of the victim. Appellant here once again reiterates the same arguments made in his ineffectiveness claim, namely, that uncorroborated testimony without evidence of violence or physical abuse and without any evidence of a medical examination does not warrant his conviction. Again, we disagree. The uncorroborated testimony of a rape victim, if believed by a jury, is sufficient to support a rape conviction. *Commonwealth v. Westcott, supra.* Moreover, no medical testimony is needed to corroborate the victim's testimony if that latter testimony was

288

rendered credible by the jury. *Id.; Commonwealth v. Flynn,* 314 Pa.Super. 162, 460 A.2d 816 (1983).

Judgment of sentence affirmed.