J-S28042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JORDAN LEE RHOADS | : | |
| | : | |
| Appellant | : | No. 1685 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 27, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001108-2023

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED DECEMBER 02, 2025**

Appellant, Jordan Lee Rhoads, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his jury trial convictions for involuntary deviant sexual intercourse ("IDSI"), sexual assault, and indecent assault.[1] We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On the evening of March 18, 2023, Jake Seibert[1] (hereinafter "Victim") finished working his shift as a cook at the Pandemonium Bar & Grill and stayed after-hours to have drinks with three friends and co-workers. The group consisted of Victim, Adam Lloyd (Victim's cousin), Jasmine Bursey (a friend of Victim's cousin), and Appellant. Eventually, in lieu of going home, the group decided to head to the Trindle Inn to continue drinking and socializing. Prior to leaving, Victim had at least one drink at the Pandemonium Bar & Grill.

_____

[1] **See** 18 Pa.C.S.A. §§ 3123(a)(1), 3124.1, and 3126(a)(2), respectively.

[1] During the trial, it was established that Victim was formerly known as Jade Seibert. It should be noted that Victim was referred to during the trial as both Jade Seibert and Jake Seibert, and was referred to at various points during the trial using both male and female pronouns. For the sake of consistency, this opinion will use male pronouns when referring to Victim.

After arriving at the Trindle Inn sometime between 11:00 p.m. and midnight, the members of the group each had several more alcoholic beverages, with Victim estimating that he had a total of between seven and nine shots by the end of the evening. Around 1:30 a.m. on March 19, the group decided that it was time to go home. Victim testified that, at that point, he was intoxicated to the point of being nauseous.

Upon leaving the Trindle Inn, the group got into Mr. Lloyd's two-door 2010 Honda Civic, with Mr. Lloyd driving and Ms. Bursey in the front passenger seat, and Appellant and Victim in the back seats. Mr. Lloyd testified that the plan was to drop off Appellant first that evening. He mentioned that he felt a squeeze on his side during one part of the drive, but that there was loud music playing and he was too busy driving to notice what was happening in the back seat. He did recall that about five to ten minutes before arriving at Appellant's house, he observed that Victim was crying, and Ms. Bursey was comforting him. At the time Mr. Lloyd thought that Victim was upset due to being sick in the back seat. After he let Appellant out of the vehicle, Victim promptly broke down in tears.

Testimony from Victim and Ms. Bursey, as well as Appellant, filled in the rest of the story. Victim testified that during the drive, Appellant grabbed his hand and placed it in Appellant's lap. Appellant then unzipped his pants, and placed Victim's hand on his genitals, before forcing Victim to begin stroking his penis. Victim recalled being confused and upset by these actions, as it was common knowledge in their group that Victim was not romantically interested in men. Victim tried to pull away, but Appellant pulled Victim's hand back and continued holding it against his genitals. Victim further testified that Appellant released his arm after

- 2 -

a few moments, then grabbed the back of his neck and began forcing Victim to perform oral sex on him. Victim stated that Appellant would release his grip on Victim's neck anytime it appeared someone in the front seat was looking in their general direction, and that during one such occasion, Victim was able to get Ms. Bursey's attention. Ms. Bursey testified that she heard Victim say, "help me," turned, and saw Victim crying while Appellant was using both of his hands to hold Victim's hand against his crotch. Ms. Bursey was able to get Appellant to release Victim's hand, and then she held onto Victim for the rest of the drive. For his part, Appellant testified that Victim grabbed his groin and performed oral sex on him, but that all of the contact was initiated by Victim, and that outside of unzipping and unbuttoning his pants, Appellant took no active involvement, and "just let it happen[.]"

After arriving at Appellant's residence, Mr. Lloyd let [Appellant] out of the vehicle, and Ms. Bursey went into the residence with Appellant. Ms. Bursey testified that, while in the residence, she warned Appellant to never touch Victim again. She then left Appellant's apartment and returned to Victim and Mr. Lloyd. Mr. Lloyd drove them to a nearby park, where Victim fully disclosed what happened between him and Appellant.

After giving Victim an opportunity to calm down, Mr. Lloyd and Ms. Bursey brought him home, then picked him up a few hours later to go to the police and report the incident. After completing the police report, Victim was taken to be examined by a Sexual Assault Nurse Examiner (hereinafter "S.A.N.E.")…. [T]he results of the examination corroborated Victim's story, and ultimately, charges were filed against Appellant on April 11, 2023.

Following several defense continuances, the case was called for a jury trial on May 13, 2024. During trial, but outside the presence of the jury, the Commonwealth withdrew the charges of rape and summary harassment against Appellant, but elected to proceed on the charges of [IDSI], sexual assault, and indecent assault. After the close of the evidentiary portion of the trial, the jury found Appellant guilty beyond a reasonable doubt on all three remaining charges. [The trial] court then ordered that Appellant be

- 3 -

evaluated by the Sexual Offenders Assessment Board, and that he appear for sentencing on August 27, 2024. On that date, [the trial] court imposed an aggregate sentence of incarceration in a state correctional institution of not less than four and a half years, nor more than nine years, followed by a mandatory term of three years of state probation. That sentence represented a bottom of the standard range sentence on the charge of IDSI.

Following sentencing, Appellant filed his post-sentence motion on September 6, 2024, contending that there was insufficient evidence supporting the IDSI conviction, that his conviction was against the weight of the evidence, and contending that [the trial] court imposed an excessive sentence. On October 8, 2024, the Commonwealth filed a response to Appellant's post-sentence motion, arguing that there was no merit to any of Appellant's requests for relief. On October 17, 2024, [the trial] court entered an order denying Appellant's post-sentence motion in its entirety. Next, on November 15, 2024, Appellant filed his notice of appeal, and his concise statement of errors complained of on appeal was filed on December 10, 2024.

(Trial Court Opinion, dated 1/6/25, at 2-7) (some footnotes omitted).[2]

Appellant raises the following issues on appeal:

I. Whether the trial court erred in finding sufficient evidence to convict [Appellant] of IDSI because there was insufficient evidence in the record that [Appellant] was reckless with respect to [Victim's] consent or that [Appellant] used

_____

[2] Appellant's post-sentence motion was received in the Cumberland County Court of Common Pleas on September 6, 2024, but was not filed by the prothonotary until September 9, 2024. Under Pennsylvania law, a document is deemed filed when it is received by the prothonotary regardless of when it is later time-stamped or formally filed. *See Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa.Super. 2003) (holding that post sentence motion which was received by prothonotary prior to deadline, but filed two days later was timely filed and therefore notice of appeal was similarly timely). *See also Commonwealth v. Williams*, 630 Pa. 169, 178, 106 A.3d 583, 588 (2014) (confirming that document is deemed timely upon receipt by prothonotary). Thus, Appellant's post-sentence motion was timely filed.

forcible compulsion given the lack of any real indication that [Victim] manifested a lack of consent and the minimal amount of physical force employed.

II. Whether the trial court erred in denying the post-sentence motion for a new trial because the verdict was against the weight of the evidence in that the only incriminating evidence of any kind was the testimony of [Victim], but [Victim's] testimony was so inconsistent, impossible to believe, and contradicted by the other evidence that the verdict shocks the conscience.

(Appellant's Brief at 5).

In his first issue, Appellant argues that there was insufficient evidence to prove he used forcible compulsion. Appellant asserts that he and Victim were friends and that they were both poking and rubbing each other on the way to the bar, and that both drank heavily throughout the night. Appellant contends that there was no evidence demonstrating that Appellant overpowered Victim. Further, Appellant highlights that Victim's friends were just feet away when the alleged assault took place. Appellant maintains that Victim did not display any signs of non-consent as Victim did not verbalize a lack of consent or cry out for help. Appellant concludes that given any evidence demonstrating Victim's lack of consent, and in light of the minimal amount of physical force employed, the Commonwealth failed to prove that Appellant was guilty of IDSI. We disagree.

Our standard of review of a challenge to the sufficiency of the evidence is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at

- 5 -

trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa.Super. 2020), *appeal denied*, 666 Pa. 266, 252 A.3d 234 (2021) (quoting *Commonwealth v. Storey*, 167 A.3d 750, 757 (Pa.Super. 2017), *appeal denied*, 655 Pa. 327, 217 A.3d 1213 (2019)).

The Crimes Code defines IDSI, in pertinent part, as follows:

**§ 3123. Involuntary deviate sexual intercourse**

**(a) Offense defined.**—A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

(1) by forcible compulsion[.]

18 Pa.C.S.A. § 3123(a)(1). The Crimes Code defines forcible compulsion as:

Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred

- 6 -

before, during or after sexual intercourse.

18 Pa.C.S.A. § 3101. This Court has explained:

> Under Subsection … 3123(a)(1), the Commonwealth must prove that the defendant engaged in intercourse "by forcible compulsion." By statute, forcible compulsion includes "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101. Thus, in addition to "sheer physical force or violence," forcible compulsion encompasses "an act of using superior force, physical, moral, psychological or intellectual[,] to compel a person to do a thing against that person's volition and/or will." *Commonwealth v. Gonzalez*, 109 A.3d 711, 720–21 (Pa.Super. 2015) (citing *Commonwealth v. Ables*, 590 A.2d 334, 337 (Pa.Super. 1991)). … [T]he object of the force is "to compel a person to engage in sexual intercourse [or deviate sexual intercourse] against that person's will." *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217, 1226 (1986).
>
> Whether a defendant used forcible compulsion depends on the totality of the circumstances, including this non-exhaustive list of factors:
>
> > the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.
>
> *Id.* Our courts have not specified every set of circumstances that can show forcible compulsion, which turns on the facts of each case. *Id.* at 1226.
>
> Proof of forcible compulsion does not require evidence that the victim resisted. *Rhodes*, *supra* at 1227 n.14, 510 A.2d at 556 n.14 (citing 18 Pa.C.S.A. § 3107). This recognizes that a victim may not struggle against the attack of an assailant who can physically overpower the victim. *Commonwealth v. Lee*, 638 A.2d 1006, 1008 (Pa.Super.

- 7 -

1994) (citing ***Commonwealth v. Gabrielson***, 536 A.2d 401, 407 (Pa.Super. 1988)).  The inquiry is whether the defendant's physical, intellectual, moral, emotional, or psychological force compelled the victim to submit to intercourse against the victim's will, not whether the victim resisted the compulsion.  ***Rhodes***, ***supra*** at 1226, 1227 n.14, 510 A.2d at 555, 556 n.14.

***Commonwealth v. Banniger***, 303 A.3d 1085, 1092-93 (Pa.Super. 2023) (some citation formatting provided).

Instantly, the trial court explained:

Viewing the evidence in the light most favorable to the Commonwealth, as well as all reasonable inferences therefrom, there was sufficient evidence to support the conviction for IDSI.  When considering the test for forcible compulsion articulated in ***Rhodes, supra***, two factors were either neutral or weighed against finding compulsion.  Those factors were that Appellant and Victim were both adults of a similar age, and the fact that Appellant did not appear to have a position of authority, domination or custodial control over Victim.  However, the physical and mental conditions of Victim and Appellant, the atmosphere and physical setting where the incident occurred and, most importantly under the facts of this case, the Victim being under duress, weighed in favor of finding forcible compulsion.

Regarding the respective physical and mental conditions of Appellant and Victim, Appellant testified that he made the decision to stop drinking at a time where he was "still cognitive," [(N.T. Trial, 5/13/24, at 144),] but that he knew Victim drank at least two drinks more than he did, and that he knew that Victim was intoxicated.  [(***Id.*** at 150-51).]  Conversely, Victim testified that he was intoxicated to the point of physical illness, and that Appellant physically overpowered him to force the sexual contact.  That testimony was supported by Ms. Bursey, who testified that she observed Appellant using both of his hands to hold Victim's hand against his genitals, despite Victim crying and pleading for help.  [(***Id.*** at 128, 130-31).]  She further testified that she had to intervene to get Appellant to release his grip on Victim.  [(***Id.*** at 128-29).]  In short, Appellant

testified that he was aware of his surroundings and his actions, while Victim testified that he was impaired and was physically overpowered by Appellant, which weighs in favor of finding forcible compulsion.

Regarding the atmosphere and physical setting where the incident occurred, all the pertinent witnesses testified that the incident occurred in a cramped back seat of a small, moving vehicle. The incident occurred after a night of moderate-to heavy drinking on the parts of all four people in the car, and there was loud music playing during the car ride. Adam Lloyd testified that at the time the incident occurred he was focused on driving the car and couldn't see anything that was happening in the back seat. [(*Id.* at 125).] Jasmine Bursey testified that she was just listening to music, relaxing and enjoying the ride home, [(*id.* at 132),] unaware of what was occurring in the back seat until Victim asked her for help. As such, the atmosphere and physical setting resulted in Victim, who was intoxicated, being isolated next to Appellant, in a moving vehicle with nowhere to escape to, and with the other two people in the vehicle either distracted by driving or otherwise not paying attention to the back seat. Therefore, this factor weighs in favor of finding forcible compulsion.

Regarding the element of duress, Victim testified as follows[:]

Q [The Prosecutor]: Tell me what you remember about that.

A [Victim]: I remember looking out the window, feeling my hand being taken. I'm like, oh, okay. This is weird, but it's nothing – it's not – I mean it's a hand being grabbed so I'm just like, okay, it could be worse, and the next thing I know it does get worse. And I feel my arm being pulled over, my hand being placed onto his jeans, and I feel a bulge underneath his jeans and him putting his hand over mine to squeeze it.

And he kept making me do it up until he decided to unzip and pull his genitalia out and make me start giving him a hand job. And I'm sitting there looking out the window freaking out. What do I do? I was in

a frozen moment of like do I do something now? Like what do I do? I'm scared. I don't know what's going on. My brain was trying to comprehend what was going on at the time because of the alcohol I had.

I was freaking myself out more of **where I was actually frozen in fear** because he was somebody that I did trust. I normally don't trust most people. So I had trusted him, and to see somebody who I trusted doing something like this was terrifying.

**The next thing I know I feel him grab my head, and he forced me to give him oral.** He did get jumpy whenever Adam and Jasmine were talking in the front seat, and whenever Jasmine went to talk to Adam he jumped and let me go. **So I'm looking out the window, and he grabs- my head, the back of my neck, and then forces me to do it more to where I couldn't breathe and I thought I was going to pass out.**

[(*Id.* at 28-30) (emphasis added).]

Victim also testified that, when Appellant initially grabbed Victim's hand and placed it against his genitals, Victim tried to pull away. [(*Id.* at 30).] In response, Appellant pulled Victim's arm back and increased the amount of force that he used to hold Victim's hand against his genitals, such that Victim was unable to get away. [(*Id.* at 30, 32).] When Appellant decided that he wanted oral sex from Victim, he again increased the amount of force he used to get what he wanted, to the point where Victim could not breathe and was on the verge of passing out. [(*Id.* at 29).] In addition to Victim's testimony, the Commonwealth presented the testimony of Jocelyn Harrell, the S.A.N.E. that examined Victim within hours of the incident. Regarding her physical examination of Victim, Nurse Harrell testified as follows:

Q [The Prosecutor]: Through the course of your head to toe examination, did you have any findings or make any observations of significance?

A [Nurse Harrell]: Yes.

Q: Tell me about that.

A: Within the patient's mouth there was redness to the back of the throat or the oral pharynx. There was bruising and redness to the inside of the bottom of the mouth inside the mucus membranes. There was bruising and tenderness present to the lateral sides of the neck, so both sides of the neck. There was redness to the back, and there was tenderness, swelling to the forearms.

[(*Id.* at 70).]

The Commonwealth also submitted into evidence photographs taken by Nurse Harrell, which reflected the bruising present on Victim. Further, Jasmine Bursey testified that after Victim was able to get her attention, she observed Victim in the back seat crying and saying, "help me," while Appellant held Victim's hand against his genitals. [(*Id.* at 128).] Those observations prompted Ms. Bursey to immediately intervene and stop the sexual contact between Appellant and Victim. It should be noted that Appellant only halted the sexual contact with Victim after Victim was able to get Ms. Bursey's attention and receive her assistance.

Victim's testimony, along with that additional evidence, was more than sufficient to establish the elements of IDSI.

(Trial Court Opinion, 1/6/25, at 10-15) (footnotes omitted).

The record supports the court's analysis. The evidence at trial established that Appellant, a once trusted friend of Victim, knew that Victim was intoxicated, and then used physical force to hold Victim's hands on Appellant's genitals and then forced Victim to perform oral sex on Appellant, causing bruising to Victim. Given the totality of these circumstances, and viewed in the light most favorable to the Commonwealth as verdict-winner, we agree with the trial court that the evidence was sufficient to sustain

Appellant's IDSI conviction. *See Banniger, supra*; 18 Pa.C.S.A. § 3123(a).

Therefore, Appellant is not entitled to relief on his sufficiency challenge.

In his second issue on appeal, Appellant asserts that the verdict was against the weight of the evidence because Victim's story was impossible. Appellant argues that Victim's testimony was inconsistent, and that it would be impossible to perform oral sex in the back of a two-door Honda Civic without the front seat passengers noticing. Appellant challenges the credibility of the witnesses, arguing that all passengers in the vehicle were drunk and could not recall what had occurred. Appellant concludes that the testimony was so implausible and far-fetched that the verdict was against the weight of the evidence, and he is entitled to a new trial. We disagree.[3]

_____

[3] Preliminarily, we note that a challenge to the weight of the evidence must be preserved by a motion for a new trial. *See* Pa.R.Crim.P. 607. This Court has found waiver of a claim where an appellant's Rule 1925(b) concise statement fails to state with "specificity the elements or verdicts for which the appellant alleges that the evidence was insufficient or against the weight of the evidence." *Commonwealth v. Juray*, 275 A.3d 1037, 1048 (Pa.Super. 2022) (finding waiver where appellant asserted generally that verdict was against weight of evidence where appellant had been convicted of multiple crimes). *But see Commonwealth v. Rogers*, 666 Pa. 190, 216, 250 A.3d 1209, 1224-25 (2021) (declining to find waiver where weight of evidence claim was readily understandable from context, and trial court had no difficulty apprehending claim as set forth in concise statement and addressing its substance). Here, while Appellant preserved the weight claim by raising it in a post-sentence motion, Appellant claimed only generally that the verdict was against the weight of the evidence in his concise statement, without specifying which conviction he challenged. (*See* Rule 1925(b) Statement, 12/10/24, at 1-2). Nevertheless, the trial court understood Appellant's issue as challenging the weight of the evidence for all convictions and was able to address those claims in its responsive opinion. Thus, we decline to find waiver. *See Rogers, supra*.

When examining a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the ... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted). A "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Rivera*, 603 Pa. 340, 363, 983 A.2d 1211, 1225 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010).

Appellant challenges the weight of the evidence for each of his convictions. We reiterate that a "person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant [] by forcible compulsion[.]" 18 Pa.C.S.A. § 3123(a)(1). Additionally, "[a] person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal

fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the person does so by forcible compulsion." 18 Pa.C.S.A. § 3126(a)(2). Finally, a person is guilty of sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1.

Here, the trial court explained that the Commonwealth introduced competent and credible evidence at trial in support of each of the three guilty verdicts:

> For example, Victim credibly testified that Appellant forced him to both stroke his penis and perform oral sex upon him. Ms. Bursey credibly testified that Appellant used both of his hands to hold Victim's hand against his crotch, and that Appellant did not let go until she told Appellant to release Victim. Further, the photographic evidence admitted through Nurse Harrell demonstrated that Victim had bruising in multiple locations, mere hours after the incident, and that all of those locations were consistent with Victim being grabbed by Appellant and forced to both stroke his penis and perform oral sex upon him.

(Trial Court Opinion, 1/6/25, at 21-22) (footnote omitted). Ultimately, the court found that "Appellant's weight of the evidence challenge is merely an invitation to reject the jury's credibility determinations, disregard the supporting physical evidence, and find Appellant's self-serving testimony to be credible." (*Id.* at 22-23) (footnote omitted). "The jury's decision to reject Appellant's explanation, and to find Appellant guilty beyond a reasonable doubt of the crimes of IDSI, sexual assault and indecent assault, based on the evidence submitted at trial, was not shocking to the conscience." (*Id.* at 23).

On this record, the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence for each of his convictions. *See Champney, supra*. Accordingly, Appellant's second issue merits no relief, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/02/2025