J-S17033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTHONY GARCIA, | : | |
| | : | |
| Appellant | : | No. 2749 EDA 2015 |

Appeal from the Judgment of Sentence July 17, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-009348-2013;
CP-51-CR-0009371-2013

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED MAY 10, 2017**

Anthony Garcia ("Garcia") appeals from the judgment of sentence imposed following his convictions of two counts each of rape, aggravated indecent assault, indecent assault, sexual assault, terroristic threats and kidnapping, and one count each of involuntary deviate sexual intercourse ("IDSI"), unlawful restraint, possession of an instrument of crime and impersonating a public servant.[1, 2]  We affirm.

The trial court set forth the relevant factual history as follows:

At trial, complainant, [A.L.,] testified that in the early morning hours of May 18, 2013, [Garcia] approached her on the street and offered her money for oral sex.  [A.L.], a heroin addict at the time, agreed to the transaction and got into his vehicle. [Garcia] then drove [A.L.] to a secluded location[,] where she

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3125(a)(1), 3126(a)(2), 3124.1, 2706, 2901(a)(2)-(3), 3123(a)(1), 2902(a)(1), 907, 4912.

[2] Garcia was charged on two separate dockets, which were consolidated for trial.

performed oral sex on him in exchange for [$20] …. When [Garcia] then said he wanted sexual intercourse, [A.L.] said it would cost him more money. [Garcia] refused to pay more money and instead pulled out a silver and black gun[,] which he pointed at her head, asking if she wanted to die. When [A.L.] asked if he would really kill her over sex, [Garcia] responded that he would. [Garcia] then brutally raped, sodomized and digitally penetrated [A.L.] while holding a gun to her the entire time and telling her that women like her deserved it. [Garcia also sucked on [A.L.]'s ear while he raped her.] [A.L.] testified that she did not attempt to get out of [Garcia's] car because she thought he would shoot her.

Immediately after the rape, [A.L.] exited the vehicle and walked down the street[,] where she borrowed a stranger's cell phone to call police. Philadelphia Police Officer Joseph Hodge testified that when he responded to the call he found [A.L.] to be highly upset and crying. Special Victim[]s Unit [("SVU")] Detective Keenya Taylor [("Detective Taylor")] also testified that [A.L.] was very upset and crying when she spoke to her shortly after the incident. [A.L.] provided a description of [Garcia], his vehicle and a partial license plate number.

The other complainant, [C.K.,] testified that in the early morning hours of June 9, 2013, [Garcia] approached her on the street and offered her money for oral sex. [C.K.], also a heroin addict who was working as a prostitute at the time, agreed to the transaction and got into his vehicle. [Garcia] drove [C.K.] to a secluded location[,] where she performed oral sex on him in exchange for [$15]. [Garcia] was unable to maintain an erection and wanted sexual intercourse. When [C.K.] refused[, Garcia] showed her an ID card with his picture and a police emblem, claimed he was a police officer, and demanded that she have sex with him or go to jail. [C.K.] cried and pleaded to be let out of the vehicle, but when she saw [Garcia] reaching for something, she submitted out of fear. [Garcia] put his fingers in her vagina and anus[,] and his penis in her vagina, brutally raping her while choking her around the neck. [Garcia] ignored her pleas to stop and when [C.K.] told [Garcia] that she was in great pain from a prior accident in which her hip was shattered, he told her he did not care and raped her even more forcefully. After [Garcia] had finished, [C.K.] exited the vehicle and started walking away. As [C.K.] walked home[,] she encountered a young male whom she knew and told him she had just been raped. When police then

drove by, the male told officers that [C.K.] had just been raped by a fellow police officer. The officers immediately transported [C.K.] to SVU. Both Officer[] Domenic Bowes and Detective Taylor [] testified that [C.K.] was extremely upset and crying. Detective Taylor also testified that she observed some discoloration around [C.K.'s] neck.

Both victims positively identified [Garcia] in photo arrays conducted at separate times. [Garcia's] DNA was found on both victims' rape kits. A search of his residence uncovered a loaded silver and black automatic handgun and an ID card for his license to carry a firearm. The license to carry a firearm, notably, has a Philadelphia Police emblem. [C.K.] identified the card as the one shown to her by [Garcia] when he claimed to be a police officer.

Trial Court Opinion, 4/8/16, at 2-4 (citations to the record omitted).

Garcia filed a Motion to Sever his two Criminal Informations. The trial court denied Garcia's Motion.

Following a jury trial, Garcia was convicted of the above-mentioned crimes. The trial court deferred sentencing and ordered a pre-sentence investigation report ("PSI") and mental health evaluation. On July 27, 2015, the trial court sentenced Garcia to an aggregate prison term of 21½ to 46 years.[3] Garcia subsequently filed a Motion for Reconsideration of Sentence, which the trial court denied. Garcia filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Garcia raises the following questions for our review:

I. Were [Garcia's] convictions on the charges of rape, IDSI, and aggravated indecent assault supported by sufficient evidence?

_____
[3] The sexual assault convictions merged for sentencing purposes.

- 3 -

II. Were [Garcia's] convictions on the charges of rape, IDSI, and aggravated indecent assault against the weight of the evidence?

III. Did the trial court abuse its discretion by denying severance of the indictments when each was based on a separate transaction and there were some similarities between the crimes, but not causal connection?

IV. Did the trial court abuse its discretion when it sentenced [] Garcia above the guidelines and considered impermissible factors in doing so?

V. Did the trial court commit an error of law when it sentenced [] Garcia concurrently [regarding the sentences imposed for] rape and indecent assault?

Brief for Appellant at 7 (capitalization omitted; issues renumbered).

In his first claim, Garcia asserts that there was insufficient evidence to support his convictions of rape, IDSI, and aggravated indecent assault with respect to C.K.[4] *Id.* at 21. Specifically, Garcia contends that the Commonwealth failed to establish forcible compulsion, because C.K. "entered [] Garcia's vehicle on her own volition and willingly engaged in prostitution on the night in question." *Id.* at 25. Garcia argues that C.K. did not use physical force to resist his further advances; the car door was unlocked during the encounter; and Garcia did not threaten C.K. with a weapon, or hold her down when she attempted to exit the car. *Id.* Garcia

---

[4] In his Concise Statement, Garcia challenged the sufficiency of the evidence only in regard to his rape conviction. Therefore, his challenges to the sufficiency of the evidence as to his IDSI and aggravated indecent assault convictions are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that "issues not included in the Statement … are waived."); *see also Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (stating that "[a]ny issues not raised in a 1925(b) statement will be deemed waived.").

- 4 -

also claims that, despite C.K.'s testimony that Garcia "choked her and violently pressed against her back during the act[,]" C.K. showed no signs of trauma or bruising. *Id.* at 26.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our prior judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

A person commits the crime of rape, a felony of the first degree, "when the person engages in sexual intercourse with a complainant by forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). "In addition to its ordinary meaning, [sexual intercourse] includes intercourse per os or per anus, with some penetration however slight[.]" *Id.* § 3101. This Court has held that,

> in order to prove the forcible compulsion component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant used either physical force, a threat of physical

- 5 -

force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape by forcible compulsion.

*Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010); *see also* 18 Pa.C.S.A. § 3101 (defining forcible compulsion as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied.").

Here, C.K. testified that in the early morning hours of June 9, 2013, Garcia drove by her a couple of times, trying to "pick her up." *See* N.T., 10/22/14, at 145-46. C.K. testified that she eventually got into Garcia's car, and Garcia agreed to pay C.K. $15 in exchange for oral sex. *See id.* at 146-47. C.K. stated that Garcia drove her to another location, where she "attempted to" perform oral sex on him for about 15 to 20 minutes before requesting more money. *See id.* at 147-49. C.K. testified that, in response, Garcia showed her an ID card depicting a police emblem, told her that he was a police officer, and told her that she would go to jail if she did not have sex with him. *See id.* at 149-50. C.K. stated that she cried and pleaded with Garcia. *See id.* at 150. C.K. testified that as she attempted to leave the car, Garcia reached between the seats and claimed that he would call for backup, and she stayed in the car and "just started to submit to what he was requesting" because she was afraid that she would get hurt or get in trouble. *Id.* C.K. testified that Garcia "inserted his penis into [her] vagina very rough and brutally[, while] pressing down on [her] back and choking

[her] neck…." **Id.** at 150-51. C.K. also testified that the assault was very painful due to injuries she had previously suffered in a car accident; she told Garcia she was in pain and asked him to stop; and Garcia refused to stop. **See id.** at 152-53. Additionally, C.K. testified that Garcia took all of the money she had. **See id.** at 154-55.

Detective Taylor, the SVU detective who took C.K.'s statement, testified that she observed slight discoloration on C.K.'s neck. **See** N.T., 10/23/14, at 230, 232-33.

Additionally, Lissette Vega ("Vega"), a forensic scientist in the Philadelphia Police Department's DNA Laboratory, performed the DNA analysis of samples taken from C.K.'s sexual assault examination and testified as an expert in DNA analysis. Vega concluded, to a reasonable degree of medical certainty, that Garcia was the source of the major component of the DNA mixture in the sample taken from C.K.'s vulva. **See** N.T., 10/23/14, at 197-99.

Here, the jury credited C.K.'s testimony, which was corroborated by physical evidence. **See** Trial Court Opinion, 4/8/16, at 4; **see also Commonwealth v. Ramtahal**, 33 A.3d 602, 607 (Pa. 2011) (stating that "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."); **Commonwealth v. Diaz**, 152 A.3d 1040, 1047 (Pa. Super. 2016) (stating that "the uncorroborated testimony of a sexual assault victim, if believed by

the trier of fact, is sufficient to convict a defendant[.]" (citation omitted)). Accordingly, we conclude that the credible evidence of record, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Garcia's conviction of rape by forcible compulsion with respect to C.K. **See Commonwealth v. Farmer**, 758 A.2d 173, 181 (Pa. Super. 2000) (concluding that evidence was sufficient to sustain rape by forcible compulsion conviction where "appellant used his body, his arms, and his hands to restraint her" during intercourse.); **see also Commonwealth v. Gabrielson**, 536 A.2d 401, 407 (Pa. Super. 1988) (stating that "where … a victim is threatened with physical abuse if she refuses to engage in intercourse with the assailant[,] even to the point where the victim considers it pointless to resist, we have held that such conduct demonstrates the use of force and threat of force sufficiently compelling to meet the statutory threshold of forcible compulsion."); **id.** at 408 (holding that "the victim need not be attacked with a weapon or be subjected to threats with a weapon or evidence any physical abuse to satisfy the statutory elements of forcible compulsion or threat of forcible compulsion."). Thus, Garcia's claim is without merit.

In his second claim, Garcia avers that his convictions of rape, IDSI, and aggravated indecent assault were against the weight of the evidence, due to "many of the same reasons expanded upon in the prior subsection." Brief for Appellant at 27, 29. Garcia also contends that "the trial court did

not properly weigh his testimony that the sexual encounters were consensual[.]" *Id.* at 29.[5]

As this Court has recognized,

[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying questions of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa. Super. 2015) (citation omitted); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." (citation omitted)).

Garcia requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial. Here, the jury found C.K.'s and A.L.'s testimony credible, *see* Trial Court Opinion, 4/8/16, at 6, and we

---

[5] Garcia preserved his challenge to the weight of the evidence in his Motion for Extraordinary Relief and Reconsideration of Verdict, which he filed on July 27, 2015, with his Motion for Reconsideration of Sentence.

- 9 -

may not reconsider the credibility of that testimony on appeal. ***See Talbert, supra***; ***see also Gibbs, supra***. Because the evidence supports the jury's verdict, and we discern no abuse of discretion by the trial court, this claim is without merit.

In his third claim, Garcia argues that the trial court erred in denying his Motion to Sever the Criminal Informations against him. Brief for Appellant at 15. Garcia claims that while the offenses share some overlapping facts, those similarities are insufficient to show a common scheme. ***Id.*** at 20. Garcia asserts that the trial court should have considered the differences between the two offenses: "[a] gun was allegedly used in one incident but not the other[; o]ne incident allegedly involved a robbery, while the other did not[; i]n one incident but not the other, [] Garcia is alleged to have impersonated a police officer." ***Id.*** Further, Garcia claims that the cumulative nature of the evidence led to his convictions. ***Id.*** at 21.

> A motion for severance is addressed to the sound discretion of the trial court, and … its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether appellant was prejudiced by the trial court's decision not to sever. Appellant bears the burden of establishing such prejudice.

***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1282 (Pa. Super. 2004) (*en banc*) (internal citations, quotation marks, and brackets omitted).

- 10 -

Pennsylvania Rule of Criminal Procedure 582 governs the joinder of offenses, and provides, in relevant part, as follows:

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1); *see also Commonwealth v. Serrano*, 61 A.3d 279, 285 (Pa. Super. 2013). However, "[t]he court may order separate trials of offenses or defendants … if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583; *see also Commonwealth v. Ferguson*, 107 A.3d 206, 210 (Pa. Super. 2015) (stating that "[t]he prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.").

Instantly, Garcia was charged with two sets of sexual offenses, which occurred within a month of each other. *See* N.T., 10/23/14, at 6; N.T. 10/22/14, at 145. Both victims were working as prostitutes to support their heroin addictions at the time of the assaults. *See* N.T., 10/23/14, at 6-7; N.T., 10/22/14, at 144-46. In both instances, Garcia drove by the victims in

the Kensington section of Philadelphia, after about 2:00 a.m., got the victims' attention, and asked for a "date." *See* N.T., 10/23/14, at 6-7; N.T., 10/22/14, at 147-48. Both victims agreed to perform oral sex on Garcia in exchange for cash. *See* N.T., 10/23/14, at 8; N.T., 10/22/14, at 147. When the victims got into the car, Garcia drove them to a secluded location. *See* N.T., 10/23/14, at 8; N.T., 10/22/14, 147-48; N.T., 10/27/14, at 146, 150-51. In both instances, Garcia forced the victims to have sexual intercourse with him after both refused. *See* N.T., 10/23/14, at 9-12; N.T., 10/22/14, at 149-53. Thus, the trial court did not abuse its discretion in concluding that evidence of each of the offenses would be admissible in a prosecution for the other, in order to prove Garcia's "common plan, scheme and design in sexually assaulting women." Trial Court Opinion, 4/8/16, at 7-8; *id.* at 8 (wherein the trial court concluded that Garcia's claim that sexual acts committed with both victims was consensual was probative of his intent and motive); *see also Commonwealth v. Newman*, 598 A.2d 275, 278 (Pa. 1991) (concluding that consolidation of rape indictments was proper where both rapes occurred late at night in the x-ray department of a hospital when appellee was the only technician on duty; both victims were female, about half of appellee's size, and suffering from a head injury; and in both cases, appellee climbed onto the examination table to rape the victims after kissing and hugging them, and fondling their breasts); *id.* (stating that

consolidation was proper even where there was a lapse of 18 months between the two offenses).

Additionally, the evidence was easily separable by the jury, as the crimes occurred on different dates and involved different victims. Garcia also forced each victim to have sexual intercourse with him by using a different method (by holding a gun to A.L.'s head, and by telling C.K. he was a police officer and would send her to jail). *See Ferguson*, 107 A.3d at 211 (stating that "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence.") (citation omitted).

Finally, Garcia has not established undue prejudice resulting from the consolidation of his charges for trial. *See Commonwealth v. Judd*, 897 A.2d 1224, 1232 (Pa. Super. 2006) (concluding that appellant was not prejudiced by the trial court's consolidation of his two cases, where the evidence "constituted an ongoing course of extremely similar sexual abuse against two youthful victims," and was separable by the jury). Accordingly, the trial court did not abuse its discretion in consolidating the Criminal Informations for trial.

In his fourth claim, Garcia contends that the trial court abused its discretion by imposing a sentence outside of the standard range of the Sentencing Guidelines. Brief for Appellant at 29. Garcia argues that some of his sentences also exceed the aggravated range, and many of his

sentences are consecutive. *Id.* at 30. Garcia claims his sentence was the result of bias and ill will by the trial court, as evidenced by the trial court's characterization of Garcia as a threat to all women. *Id.* at 31-32. Additionally, Garcia claims that the trial court applied the sentencing guidelines incorrectly. *Id.* at 33.

Garcia's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (quotation marks and some citations omitted).

Although Garcia filed post-sentence Motions, the Motions did not include his claims that the trial court improperly imposed a sentence outside the standard range of the Sentencing Guidelines, and that his sentence was the result of bias and ill will. *See* Motion for Reconsideration of Sentence, 7/25/15, at 1-2. Because Garcia did not properly preserve his fourth claim

at sentencing or in either of his post-sentence Motions, it is waived.[6]  **See**

**Moury**, 992 A.2d at 170 (stating that "[o]bjections to the discretionary

aspects of a sentence are generally waived if they are not raised at the

sentencing hearing or in a motion to modify the sentence imposed.").[7]

In his fifth claim, Garcia asserts that that his rape and indecent

---

[6] Garcia's 1925(b) Concise Statement also identifies a different discretionary aspects of sentencing claim than the one presented in his appellate brief. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."); **see also Lord**, **supra**.  Moreover, Garcia failed to include a separate Pa.R.A.P. 2119(f) Statement in his brief; rather, his Argument section contains a one-paragraph subsection designated as the Pa.R.A.P. 2119(f) Statement, which merely states the requirement that the Statement raise a substantial question.  **See** Pa.R.A.P. 2119(f) (providing that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth **in a separate section of the brief** a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.") (emphasis added).  The Commonwealth objected to this defect.  **See Commonwealth v. Anderson**, 830 A.2d 1013, 1017 (Pa. Super. 2003) (stating that "if an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth objects, the issue is waived for purposes of review.").

[7] We note that the trial court had the benefit of a PSI in imposing the sentence.  **See** Trial Court Opinion, 4/8/16, at 9; **see also Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988) (stating that where the trial court had the benefit of a PSI, this Court will presume that the trial court was aware of, and considered all relevant factors, and "[h]aving been fully informed by the [PSI], the sentencing court's discretion should not be disturbed.").  Moreover, the trial court noted that Garcia had not accepted responsibility, and has "a penchant for looking at victims and looking at some of the most vulnerable people of our society…."  N.T., 7/17/15, at 33-34.

assault[8] convictions with respect to A.L. should have merged for sentencing purposes, and therefore, he received an illegal sentence. Brief for Appellant at 34.

"[A] claim that crimes should have merged for purposes of sentencing challenges the legality of a sentence and, thus, cannot be waived." **Commonwealth v. Parham**, 969 A.2d 629, 631 (Pa. Super. 2009). Therefore, "our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Quinta**, 56 A.3d 399, 400 (Pa. Super. 2012).

> The merger doctrine mandates that
>
> [n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Thus, merger is prohibited "unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).

---

[8] "A person is guilty of indecent assault if the person has indecent contact with the complainant … for the purpose of arousing sexual desire in the person or the complainant and … the person does so by forcible compulsion[.]" 18 Pa.C.S.A. § 3126(a)(2). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

Generally, convictions of indecent assault and rape merge for sentencing purposes. **See Commonwealth v. Smith**, 459 A.2d 777, 788 (Pa. Super. 1983). However, "when an indecent assault conviction is predicated upon an act separate from the act of forcible intercourse, the indecent assault conviction does not merge with a conviction for rape. This is true whether the act which constitutes indecent assault is committed immediately prior to, or concurrently with the rape." **Commonwealth v. Richter**, 676 A.2d 1232, 1236 (Pa. Super. 1996).

Upon review, we conclude that the rape and indecent assault convictions as to A.L. were based on two separate acts. Garcia raped A.L. by having sexual intercourse with her while holding a gun to her head. Garcia committed the separate offense of indecent assault by sucking on A.L.'s ear, an intimate part of the body which Garcia touched for sexual gratification. **See** N.T., 10/27/14, at 250; **see also Commonwealth v. Fisher**, 47 A.3d 155, 157 (Pa. Super. 2012) (stating that "areas of the body other than the genitalia, buttocks, or breasts can be intimate parts of the body…."); **id.** at 158 (upholding indecent assault conviction and concluding that backs of victim's legs from ankle to just below the buttocks were intimate parts of the body that the appellant touched for sexual gratification); **Commonwealth v. Capo**, 727 A.2d 1126, 1127-28 (Pa. Super. 1999) (upholding indecent assault conviction where appellant kissed victim's face and neck, and rubbed her shoulders, back, and stomach).

Even if these actions were part of the same criminal episode, the convictions were based on separate facts, as the act of sucking on A.L.'s ear was not required to prove sexual intercourse, and proof of forcible sexual intercourse was unnecessary to support Garcia's indecent assault conviction. *See Richter, supra*; *see also id.* (concluding that appellant's rape and indecent assault convictions did not merge where the indecent assault conviction was predicated upon fondling victim's breasts, and the act was irrelevant to establishing the requisite elements of rape). Accordingly, Garcia is not entitled to relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2017